# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ISAAC JONES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1012** |
| **WARDEN, WASHINGTON**<br>**CORRECTIONAL CENTER**<br>**FRANKLINTON, LOUISIANA** | **SECTION "J"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.  STATE COURT PROCEDURAL BACKGROUND

The petitioner, Isaac Jones, is currently incarcerated in the Washington Parish Jail[2] in Franklinton, Louisiana.[3]  Jones was charged by bill of information in Jefferson Parish on August 6, 2007, with being a felon in possession of a firearm, possession of marijuana with intent to distribute, possession of cocaine in excess of 28 to 199 grams, and possession of a firearm with obliterated serial numbers.[4]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as follows:

> The evidence at trial shows that between 7:00-7:30 p.m. on April 22, 2005, Sergeants Shane Klein and Curtis Matthews were on patrol in the Pebble Walk area of Harvey near the Emerald Point Apartments in an unmarked police unit. Sgt. Klein saw two men standing near a white convertible Pontiac Firebird and observed what he believed to be a hand-to-hand narcotics transaction. The officers approached the men in their police unit to further investigate. According to Sgt. Klein, defendant made eye contact with the officers and jumped into his vehicle while the second man fled through the apartment complex. Sgt. Klein exited his vehicle to approach defendant at which time defendant put his vehicle in reverse almost striking Sgt. Klein and the police unit. Sgt. Klein returned to his car and a chase ensued.
>
> The car chase lasted approximately 30-40 seconds before defendant crashed his car into several mailboxes and fled on foot. Sgt. Klein exited his vehicle and pursued defendant. During the foot chase, defendant discarded a bag containing marijuana and a bag containing crack cocaine, which Sgt. Klein retrieved. Sgt. Klein continued to chase defendant but ultimately lost sight of him near Building 26 of the Emerald Point apartment complex.
>
> Other officers set up a perimeter around the area in an attempt to catch defendant. Meanwhile, Sgt. Klein returned to defendant's car where he found another bag of marijuana near the rear driver's side tire. He looked inside the car where the keys were still in the ignition. He saw a marijuana cigar, or "blunt," in the ashtray

---

[2]Counsel erroneously refers to the prison as the Washington Correctional Center, which was the former name of the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.

[3]Rec. Doc. No. 1.

[4]St. Rec. Vol. 1 of 6, Bill of Information, 8/6/07.

and found a traffic citation issued to "Isaac Jones" in the car. The name on the traffic citation was used to obtain a photograph, which was shown to Sgt. Klein and Sgt. Matthews. Sgt. Klein identified the man in the photograph as the same person he was chasing and the same person he saw involved in the hand-to-hand transaction. Sgt. Matthews also identified the man in the photograph as the same person who was engaged in the hand-to-hand transaction and who fled in the vehicle. Further, a loaded .40 Glock firearm was found under the hood of the car.

Lieutenant Robert Gerdes recognized the white convertible Firebird as being parked near Building 26 on several occasions over the past few months. Lt. Gerdes explained that the neighborhood was part of Project Safe Neighborhood, a program funded by federal grants to provide extra patrols in high-crime areas, and that he was familiar with the area from his own patrols of the neighborhood. Upon learning this, the officers retrieved the keys from the Firebird and went to Building 26 to see if any of the keys fit any of the apartments. They knocked on the door of the first apartment, number 647, but there was no answer. They then tried a key and the key fit. Sgt. Klein stated they went inside the apartment to secure it and to prevent the destruction of evidence. After determining that no one was in the apartment, the officers locked the door to the apartment and posted officers at the door while a search warrant was obtained.

Sgt. Klein obtained and executed a search warrant for the apartment on the same day as the incident. A grey t-shirt and a pair of ripped blue jeans, both of which were damp, were found in a closet. Sgt. Klein stated these were the same clothes he saw defendant wearing. He further explained that during the chase, defendant ripped his clothes when he climbed over a fence. The search also yielded narcotics. Crack cocaine was found in the pocket of a jacket along with a credit card and identification card in defendant's name and ten to fifteen bags of marijuana were found in a Reebok shoebox. Additional crack cocaine and marijuana were found throughout the apartment. Also, a gun with the serial number scraped off was discovered and items used for distributing cocaine, such as a glass container that field tested positive for cocaine, a digital scale, a razor blade and sandwich bags, were found. Paperwork belonging to defendant, pictures of defendant, a temporary license plate tag that matched the one listed on the traffic citation found inside the Firebird, and a phone bill for the cell phone found inside the Firebird were all found in the apartment.

State v. Jones, 33 So.3d 306, 312-14 (La. App. 5th Cir. 2010); State Record Volume 1 of 6, Louisiana Fifth Circuit Court of Appeal Opinion, 09-KA-688, pages 3-5, February 9, 2010.

Jones was tried before a jury on July 15, 16 and 17, 2008, and was found guilty as charged on each count.[5]  At a hearing held on August 1, 2008, the state trial court denied Jones's motion for a new trial.[6]  After waiver of legal delays, the court sentenced Jones that same day to imprisonment at hard labor for 15 years on count one, 30 years each on counts two and three, and five years on count four.[7]  The sentence on count one and the first five years of the sentence on count three were to be served without benefit of parole, probation or suspension of sentence.  The sentences on counts two and three were to run concurrently and the sentences on counts one and four were to run consecutively to the other sentences.  The court also denied Jones's motion to reconsider the sentences.  The State filed a multiple bill as to count three to which Jones plead not guilty.[8]

On September 25, 2008, the state trial court granted Jones leave to appeal to the Louisiana Fifth Circuit.[9]  This appeal was later dismissed on motion of the clerk of the

---

[5]St. Rec. Vol. 1 of 6, Trial Minutes, 7/15/08; Trial Minutes, 7/16/08; Trial Minutes, 7/17/08; Jury Verdict Form, 7/17/08; St. Rec. Vol. 3 of 6, Trial Transcript, 7/16/08; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 7/16/08; Trial Transcript, 7/17/08.

[6]St. Rec. Vol. 1 of 6, Sentencing Minutes, 8/1/08; St. Rec. Vol. 4 of 6, Sentencing Transcript, 8/1/08.

[7]Id.

[8]Id.; Multiple Bill, 8/1/08; Motion to Reconsider, 8/12/08; Trial Court Order, undated.

[9]St. Rec. Vol. 1 of 6, Motion for Appeal, 9/10/08; Trial Court Order, 9/25/08.

state trial court for counsel's failure to pay costs after the period to do so was extended by the court.[10]

Thereafter, on February 27, 2009, the state trial court held a hearing on the multiple bill and adjudicated Jones to be a third felony offender.[11]  The court re-sentenced Jones on March 6, 2009, on count three, as a multiple offender to serve 40 years in prison, with the first five years to be served without benefit of parole, probation, or suspension of sentence, and to run concurrently with the other sentences.[12]

The court later denied Jones's motions to reconsider this sentence and for new trial.[13]  The court granted his motion to reinstate his appeal.[14]  In the appeal, Jones raised six errors:[15] (1) The trial court erred in denying the suppression of the unconstitutionally seized evidence. (2) The trial court erred in denying the suppression of the single photograph identification. (3) The evidence was insufficient to convict on all four counts.

---

[10]St. Rec. Vol. 1 of 6, Motion to Dismiss Criminal Appeal (07-04622), 10/31/08; Trial Court Judgment, 1/29/09.

[11]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 2/27/09; St. Rec. Vol. 4 of 6, Multiple Bill Hearing Transcript, 2/27/09.

[12]St. Rec. Vol. 1 of 6, Multiple Bill Sentencing Minutes, 3/6/09; Multiple Bill Sentencing Transcript, 3/6/09.

[13]St. Rec. Vol. 1 of 6, Motion to Reconsider Sentence, 3/26/09; Trial Court Order, 3/30/09; Motion for New Trial, 3/26/09; Trial Court Order (2), 3/30/09.

[14]St. Rec. Vol. 1 of 6, Motion to Re-Institute Motion for Appeal, 3/26/09; Trial Court Order, 3/30/09.

[15]St. Rec. Vol. 4 of 4, Appeal Brief, 09-KA-688, 10/1/09.

(4) The trial court erred in adjudicating Jones to be a third felony offender. (5) The sentence was unconstitutionally excessive. (6) Counsel was ineffective when he (a) failed to move for severance of the felon in possession charge, (b) interjected evidence that the vehicle Jones abandoned was stolen, (c) allowed police to state that firearms with obliterated serial numbers could have been used in numerous crimes, and (d) and (e) failed to object to the expert testimony of Sergeant Klein, Captain Scanlan and Lisa Maise. He also argued that the cumulative effect of these errors by counsel warranted reversal of the conviction. Jones further requested that the court conduct an errors patent review.

On February 9, 2010, the Louisiana Fifth Circuit affirmed the convictions and sentences, finding no merit in issues one, two, three, five and six.[16] The court barred review of Jones's fourth claim, because he did not file an objection to the multiple bill to preserve the claim for appellate review.[17]

Jones's conviction became final 30 days later, on March 11, 2010, because he did not seek rehearing or file for review in the Louisiana Supreme Court. <u>Butler v. Cain</u>, 533 F.3d 314 (5th Cir. 2008) (citing <u>Roberts v. Cockrell</u>, 319 F.3d 690, 694-95 (5th Cir.

---

[16]<u>State v. Jones</u>, 33 So.3d at 306; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 09-KA-688, 2/9/10.

[17]<u>Id</u>.

2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

On January 10, 2011, Jones's counsel filed an application for post-conviction relief with the state trial court raising the following grounds: (1) Jones received ineffective assistance of trial counsel when counsel failed to investigate and call witnesses for the defense, even after Jones provided him before trial with witness names, documents and photographs in support of an alibi. (2) The cumulative errors at trial demonstrate counsel's ineffective assistance, because counsel failed to move to sever the felon in possession count, to object to the improper evidence submitted by the experts, Sergeant Klein, Captain Scanlan and Lisa Maise, which grounds were raised on appeal and required reconsideration. (3) The State relied on unlawfully seized evidence. (4) The single photograph identification was suggestive. (5) The evidence was insufficient to support the verdicts on each count.

The state trial court denied the application on March 18, 2011, finding the ineffective assistance of counsel claim conclusory and without merit.[18] The court declined to consider the remaining claims, finding them barred from review under La. Code Crim. P. art. 930.4(C), because each of the underlying issues had been fully litigated on direct appeal.

---

[18]St. Rec. Vol. 1 of 6, Trial Court Order, 3/18/11.

On April 18, 2011, Jones filed for review of this ruling in the Louisiana Fifth Circuit.[19] The court denied the application on procedural grounds on May 20, 2011, finding that the application did not comply with La. App. R. 4-5 for failure to provide the appropriate supporting documentation.[20] Without addressing this procedural dismissal, on June 20, 2011, Jones's counsel filed a writ application with the Louisiana Supreme Court raising the same post-conviction issues.[21] The court denied the application without stated reasons on March 2, 2012.[22]

## II.    FEDERAL HABEAS PETITION

On March 15, 2012, the clerk of this court filed Jones's petition for federal habeas corpus relief in which Jones, assisted by counsel, asserts the following arguments:[23] (1) Counsel failed to investigate and interview eyewitnesses after names, documents and photographs were provided to him by Jones before trial. (2) The cumulative errors at trial demonstrate counsel's ineffective assistance, because counsel (a) failed to move to sever

---

[19]St. Rec. Vol. 6 of 6, 5th Cir. Writ Application, 11-KH-406, 4/18/01.

[20]St. Rec. Vol. 5 of 6, 5th Cir. Order, 11-KH-406, 5/20/11.

[21]St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 11-KP-1301, 6/21/11 (postmarked and dated by counsel 6/20/11); St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2011-KP-1301, 6/21/11 (showing postmark 6/20/11).

[22]State v. Jones, 83 So.2d 1042 (La. 2012); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2011-KP-1301, 3/2/12.

[23]Rec. Doc. No. 1, pp. 8-16.

the felon in possession count and to object to the improper evidence submitted by the experts Sergeant Klein and Lisa Maise, which grounds were raised on appeal and required reconsideration, (b) failed to object to the testimony of Sergeant Klein in violation of his due process rights and <u>Daubert v. Merill Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1983), (c) the State relied on unlawfully seized evidence, (d) the single-photograph identification process was suggestive, and (e) there was insufficient evidence to support the verdicts, which were based on constructive possession.

The State filed a response in opposition to Jones's petition in which it argues that the petition was not timely filed, but concedes that the claims are exhausted, without addressing the merits.[24]

III. <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[25] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198

---

[24]Rec. Doc. No. 8.

[25]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

(5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to Jones's petition which was filed by counsel on April 20, 2012.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Jones's petition is not timely filed, but concedes that the claims are exhausted. While there is some possibility that the State's timeliness calculation is correct, I cannot accept it in light of the vagueness and uncertainty of the state court record. For the following reasons, I will assume that the petition was timely filed in this court.

Specifically, the one-year AEDPA statute of limitations period began to run in Jones's case on March 12, 2010, the day after his conviction became final. 28 U.S.C. §2244(d)(1)(A). The AEDPA statute of limitations period ran without interruption for only 304 days, when his counsel filed an application for post-conviction relief with the state trial court. When it was denied, Jones's counsel filed a timely writ application with the Louisiana Fifth Circuit, which delayed 32 days before dismissing the application on procedural grounds. I cannot determine based upon the subsequent timely but unclear

writ application filed by Jones's counsel in the Louisiana Supreme Court and the high court's perfunctory one-word denial of the application, after a delay in that court of eight (8) months, whether the state Fifth Circuit's procedural dismissal was proper, challenged or subsequently approved by the state supreme court. Thus, I cannot conclusively determine on this record that Jones did not have a properly filed pending state proceeding that would have tolled the AEDPA limitations period at all relevant times. 28 U.S.C. § 2244(d)(2) ("the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claims is pending shall not be counted toward any period of limitation under this section.") In his filings, plaintiff's counsel acted within all applicable time periods, without undue delay, at each stage of the post-conviction proceedings. Under these circumstances and on this less than clear record, I cannot conclude with confidence that Jones's filings did not toll the AEDPA period in such a way as to render the petition timely filed.

Accordingly, I will address the merits of Jones's claims. This is a counsel-filed petition that is not broadly construed in the same fashion afforded a pro se petition. For this reason, I will address the claims in the same manner as they are presented by counsel in the petition.

IV.    STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.    INEFFECTIVE ASSISTANCE OF COUNSEL

Jones alleges that his trial counsel provided ineffective assistance when he failed to investigate and interview eyewitnesses after Jones provided him with names, documents and photographs before trial.  He further alleges that the cumulative errors that occurred at trial also contribute to the prejudicial effect of trial counsel's ineffective assistance.  He specifies that these trial errors occurred in the following ways: (1) Counsel failed to move to sever the felon in possession count, to object to other crimes evidence and to object to the improper evidence submitted by the experts, Sergeant Klein and Lisa Maise, which grounds were raised on appeal and required reconsideration. (2) Counsel failed to object to the testimony of Sergeant Klein in violation of his due process rights and Daubert. (3) The State relied on unlawfully seized evidence.  (4) The single-photograph identification process was suggestive. (5) There was a lack of evidence to support the verdicts which were based on constructive possession.

In addressing the first claim of ineffective assistance of counsel on post-conviction review, the state trial court found no factual support and no merit to the claim under Strickland v. Washington, 466 U.S. 668 (1984).  The court also declined to review the claim of cumulative error, finding that each of the underlying arguments had been found meritless during the direct appeal and were barred from further consideration by La. Code Crim. P. art. 930.4(C).  On direct appeal, the Louisiana Fifth Circuit found that

14

Jones failed to demonstrate deficient performance or prejudice arising from trial counsel's performance.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim

based solely on a petitioner's failure to meet either prong of the test. <u>Kimler</u>, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under <u>Strickland</u>, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal v. Puckett</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under <u>Strickland</u>, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best

practices or most common custom." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 788 (2011). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689). This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466

U.S. at 689; <u>Moore v. Johnson</u>, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. <u>Id</u>.

A.    <u>INVESTIGATION AND INTERVIEW OF EYEWITNESSES</u>

Jones alleges that his counsel visited him only twice before trial. During one visit, Jones claims that he provided counsel with the names of alibi witnesses, including Lorenzo Williams, but counsel did not interview these witnesses or thoroughly investigate the case. Jones also contends he provided counsel with photographs and employment records, which were not presented at trial. Jones further alleges that he and his trial counsel argued about whether to proceed to trial or accept a plea offer. Jones construes this as an indication that counsel was not prepared for trial. He also alleges that counsel's failure to present a complete alibi defense was critical in the case, especially since the police lost sight of the subject and based his arrest on a single-photograph identification.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege <u>with</u> <u>specificity</u> what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) <u>Moawad v. Anderson</u>, 143 F.3d 942, 948 (5th Cir. 1998). A petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. <u>Diaz v. Quarterman</u>, 239 Fed. Appx. 886, 890 (5th Cir.

2007) (citing <u>Strickland</u>, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Rather, to prevail on a such claim, the petitioner must provide factual support as to what <u>exculpatory</u> evidence further investigation would have revealed. <u>See</u> <u>Moawad</u>, 143 F.3d at 948; <u>see also</u> <u>Brown v. Dretke</u>, 419 F.3d 365, 375 (5th Cir. 2005); <u>Davis v. Cain</u>, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Jones speculates that his counsel was not prepared and did not investigate the case or interview witnesses he identified. His claims are wholly unsupported and conclusory. <u>Green v. Johnson</u>, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). Jones has not specified what, if anything, further investigation would have provided his counsel or what exculpatory information was available that was not discovered by counsel's own investigation and preparation. This is not sufficient to establish a deficiency in counsel's performance. <u>Moawad</u>, 143 F.3d at 948.

The record indicates that counsel was prepared throughout the pretrial and trial proceedings. For example, on May 19, 2008, counsel participated in a full hearing on the

motion to suppress the warrant and the identification.[26]  The transcript reflects that

counsel asked pointed and relevant questions to the officer who testified, demonstrating

detailed knowledge of the case, including the chase, the physical description, the

photographic identification, the arrest and the seized evidence.  The same is true for

counsel's trial performance.  The trial transcript reflects that counsel conducted discovery

and investigation prior to trial, including a pretrial discovery conference with the

prosecutors.[27]

In short, the record demonstrates that counsel was knowledgeable about the case

and well prepared for trial.  Counsel's decisions to present the case pursuant to

professional judgment based on that knowledge, as opposed to Jones's desires, is not

unreasonable.  "[A]n attorney's strategic choices, usually based on information supplied

by the defendant and gathered from a thorough investigation of the relevant law and

facts, 'are virtually unchallengeable.'"  <u>Bryant v. Scott</u>, 28 F.3d 1411, 1415 (5th

Cir.1994) (quoting <u>Strickland</u>, 466 U.S. at 691). While an attorney must engage in a

reasonable amount of pretrial investigation, "the reasonableness of an attorney's

investigation may critically depend on the information forwarded by the defendant and

the defendant's own strategic decisions about his representations."  <u>Bryant</u>, 28 F.3d at

---

[26]St. Rec. Vol. 2 of 6, Motion Hearing Transcript, 5/19/08.

[27]St. Rec. Vol. 3 of 6, Trial Transcript, pp.12-13, 7/16/08 (prosecutor's discussion of the years of discovery dating back to 2008 and mention of a meeting between counsel.).

1415. Jones has presented nothing that would establish that his counsel did not fulfill his duty to investigate and prepare for the case.

Jones mentions that he provided counsel with pictures and employment records. He does not, however, indicate what relevance these items had to his case. He has presented nothing to this court or to the state courts to support his conclusory allegations concerning these materials, and he has not met his burden of proving deficient performance or prejudice to the defense. I also note that the record reflects that counsel considered calling Jones's employer to trial. During a bench conference before the first defense witness was called, the prosecutor asked if the defense would be calling any alibi witnesses. Defense counsel responded that he planned to call Jones's employer, who could only testify that Jones was employed in April 2005.[28] Counsel clarified that the employer had advised counsel that he did not know and could not testify if Jones was at work at the time of the crime.[29] After a lengthy discussion with the court and argument from counsel, the court opined that the testimony was not relevant to the defense, since it was not particular to the timing of the crime.[30] Considering the court's comments, counsel apparently resolved not call the employer and proceeded to call only the three

---

[28]St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 231-32, 7/16/08.

[29]Id., p. 232.

[30]Id., pp. 235-36.

witnesses who did testify at trial. This exchange indicates that counsel considered Jones's

employment as a possible alibi, investigated that defense and interviewed the employer.

Jones has not discussed or shown any unreasonableness in counsel's apparent strategic

decision not to call this witness or utilize the other items at trial.

In addition, Jones contends that he provided his trial counsel with the names of

witnesses, including Lorenzo Williams, who could provide alibi information. Jones does

not identify Williams further or explain his relevance to the case. He has not provided

any proof as to what Williams or any other unnamed witness might have testified. He

also has presented nothing to prove that counsel actually did not interview Williams or

the other witnesses. Such proof would not be appropriately presented here for the first

time. See Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1401 (2011) ("At a

minimum, therefore, § 2254(e)(2) still restricts the discretion of federal habeas courts to

consider new evidence when deciding claims that were not adjudicated on the merits in

state court.") (citing Williams v. Taylor, 529 U.S. at 427-429). As presented, his claim

is purely speculative and not sufficient to warrant habeas relief.

Furthermore, "'[c]omplaints of uncalled witnesses are not favored, because the

presentation of testimonial evidence is a matter of trial strategy and because allegations

of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351

F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521

(5th Cir. 1978)). "'Failure to present [evidence does] not constitute 'deficient'

performance within the meaning of <u>Strickland</u> if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" <u>Williams v. Cockrell</u>, 31 Fed. Appx. 832 (5th Cir. 2002) (<u>quoting</u> <u>Williams v. Cain</u>, 125 F.3d 269, 278 (5th Cir. 1997)).

Jones has presented nothing, other than his self-serving and conclusory argument, to establish that counsel did not contact these alleged alibi witnesses or investigate them as potential trial witnesses.  The record does not demonstrate that counsel acted outside of sound trial strategy in choosing his witnesses, focus and presentation of the defense's case, and Jones has presented nothing to counter this.  The fact that the defense was not successful, <u>i.e.</u> that Jones was convicted, does not mean that counsel's actions were deficient. <u>See</u> <u>Martinez v. Dretke</u>, 99 Fed. Appx. 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Strickland</u>, 466 U.S. at 689 (citations omitted). Jones has provided no basis to undermine the deference due his counsel's trial decisions.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, <u>Strickland</u>.  He is not entitled to relief on this claim.

B.   <u>CUMULATIVE ERRORS</u>

Jones contends that his trial counsel's errors should be judged on the basis of their cumulative effect.  He argues that other trial errors, impacted by counsel's failure to investigate and present an alibi defense, resulted in the guilty verdict.  Jones also asks this court to consider the overall weakness of the State's case in considering the cumulative errors of counsel.  These include the alleged lack of evidence to support the verdict and the state trial court's failure to suppress the seized evidence and the single-photograph identification.

Jones also alleges that the grounds of ineffective assistance of counsel raised in his direct appeal should be reconsidered as part of the cumulative errors.  Jones outlines these claims as counsel's failure to protect the record, failure to move for severance, presentation of evidence of the stolen vehicle, and failure to object to other crimes evidence presented by the State's witnesses.  Jones also argued on direct appeal to the Louisiana Fifth Circuit that counsel failed to object to the expert testimony of Sergeant Klein, Captain Tim Scanlan and Lisa Maise.  He now argues that the expert testimony from Sergeant Klein also did not comply with the standards in <u>Daubert</u>.

The United States Fifth Circuit has recognized that "although rare," "instances of cumulative trial errors may 'fit the Supreme Court's description of a denial of due process as 'the failure to observe that fundamental fairness essential to the very concept of justice.'" <u>Perez v. Dretke</u>, 172 Fed. Appx. 76, 81-82 (5th Cir. 2006) (quoting <u>Derden</u>

v. McNeel, 978 F.2d 1453, 1457 (5th Cir. 1992)).  However, in Derden, the Fifth Circuit

held that "federal habeas corpus relief may only be granted for cumulative errors in the

conduct of a state trial where (1) the individual errors involved matters of constitutional

dimension rather than mere violations of state law; (2) the errors were not procedurally

defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the

resulting conviction violates due process.'"  Derden, 978 F.2d at 1454 (quoting Cupp v.

Naughten, 414 U.S. 141, 147 (1973)).  The court later further clarified when such errors

may be considered:

> Under this doctrine, "errors of state law, including evidentiary errors, are
> not cognizable in habeas corpus." [Derden, 978 F.2d] at 1458 (emphasis
> added).  Instead, such errors are of the requisite constitutional nature only
> if they "infuse[ ] the trial with unfairness as to deny due process of law."
> Id. (quoting [Lisenba v. California, 314 U.S. 219, 228 (1941)]).

(emphasis in original) Perez v. Dretke, 172 Fed. Appx. at 82.  The court did not

specifically address whether a federal habeas claim could be made for the cumulation of

deficiencies in the performance of counsel under Strickland.

    To evaluate such a claim, this court must review the individual contentions of

ineffective assistance.  If they are meritless, that result cannot be changed simply by

asserting the same claims collectively.  "[I]neffective assistance of counsel cannot be

created from the accumulation of acceptable decisions and actions."  United States v.

Hall, 455 F.3d 508, 520 (5th Cir.2006) (citing Miller, 200 F.3d at 286 n.6); Sholes v.

Cain, 370 Fed. Appx. 531, 535 (5th Cir. 2010); Mullen v. Blackburn, 808 F.2d 1143,

1147 (5th Cir. 1987) (with respect to cumulation of meritless claims, "Twenty times zero equals zero.").

I have reviewed each of the alleged errors of defense counsel. None demonstrate an error in counsel's performance that could have caused any cumulative prejudicial effect. See Turner v. Quarterman, 481 F.3d 292, 301 (5th Cir. 2007) (citing Derden, 978 F.2d at 1454, 1461) (Meritless claims or claims that are not prejudicial cannot be cumulated regardless of the total number raised)).

1. Actions of Trial Counsel

As part of his cumulative error argument, Jones points to the following specific errors by counsel to be considered together with other trial errors also addressed below.

a. Failure to Move for Severance

Jones complains that his trial counsel failed to move for a severance of the felon in possession count, which allowed the jury to hear evidence of his prior conviction for possession of cocaine. On direct appeal, the Louisiana Fifth Circuit found these claims meritless. The court concluded that counsel did not err or prejudice the defense, because Louisiana law permitted the charges to be tried together. Thus, whether to file a motion to sever was discretionary. In the state courts, this claim was presented in the context of cumulative error, which was denied as repetitive because the underlying assertion was found meritless on appeal.

Under Louisiana law, ". . . the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La. Code Crim. P. art. 61. The prosecutor's decision appropriately to join criminal charges in a bill of information is not subject to objection by the defense. See State v. Brooks, 541 So.2d 801 (La. 1989) (citing La. Code Crim. P. art. 61 as providing broad discretion to the district attorney in determining whether to sever counts in an indictment); State v. Burnett, No. 2007-KA-2523, 2008 WL 2064975, at *3-4 (La. App. 1st Cir. 2008) (unpublished) (the district attorney has the discretion to prosecute offenses separately or in aggregate) (citing State v. Joles, 492 So.2d 490 (La. 1986)) (addressing joinder of theft counts).

Louisiana law provides for the joinder of criminal acts in one bill of information or indictment under certain circumstances:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

La. Code Crim. P. art. 493.

In addition, La. Code Crim. P. art. 493.2 permits joinder where "offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement

at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." La. Code Crim. P. art. 495.1, however, provides that "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."

In Jones's case, the Louisiana Fifth Circuit determined that the charges were properly joined in the bill of information under the parameters of La. Code Crim. P. art. 493.2, because they arose from the same underlying facts. The court also determined that there was no prejudice that might have prompted the court to sever under La. Code Crim. P. art. 495.1. The court concluded that counsel's decision not to move for severance under the circumstances of the case was within the ambit of trial strategy and Jones did not disprove the soundness of that decision.

There was no requirement under state law that any count in the bill of information against Jones be severed and tried separately as a matter of law. Jones was charged with (and eventually convicted of) four felonies in the bill of information. A felony, under Louisiana law, "is any crime for which the offender may be sentenced to death or imprisonment at hard labor." La. Rev. Stat. Ann. § 14:2. Felonies necessarily punished by confinement at hard labor are to be tried by a 12 person jury. La. Code Crim. P. art.

782. Other felonies which may be punished by confinement at hard labor are to be tried by a jury of six. <u>Id</u>. The felon in possession of a weapon charge is defined by La. Rev. Stat. Ann. § 14:95.1 and <u>shall</u> be punished by confinement at hard labor. Jones was also charged with possession with intent to distribute marijuana in violation of La. Rev. Stat. Ann. § 20:966(A), a felony that <u>shall</u> be punishable by confinement at hard labor. The third charge was possession of cocaine between 28 and 199 grams in violation of La. Rev. Stat. Ann. 40:967(F). This charge is a felony that <u>shall</u> be punishable by confinement at hard labor. Each of these counts was triable by a 12 person jury under La. Code Crim. P. art. 782. Jones's fourth and final charge was a violation of La. Rev. Stat. Ann. § 40:1788, possession of a firearm with an obliterated serial number. A violation of this provision is punishable by imprisonment at hard labor. La. Rev. Stat. Ann. § 40:1792(C).

All of these counts were necessarily punishable with confinement at hard labor. Louisiana law did not require severance and instead allowed for their joinder in the same bill of information. Even if they were not, as outlined above, felonies that are <u>necessarily</u> punishable with confinement at hard labor can be joined in the same bill of information with offenses that <u>may</u> be punishable by confinement at hard labor, if the offenses are "of the same or similar character" or "are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." For this reason, under Louisiana law, "there is no prejudice and severance is

not required if the facts of each offense are not complex, and there is little likelihood the jury will be confused by the evidence of more than one crime." State v. Lewis, 557 So.2d 980, 984 (La. App. 4th Cir. 1990).

Having reviewed the record in its entirety, I find that Jones was not prejudiced simply because the offenses were tried together. Each of the charges against Jones were of similar character, i.e., felonies related to illicit drug activity. The facts of the offenses were not complex or confusing and were tied together through the common thread of Jones's activities. The common set of facts, transaction or scheme included the drug deal witnessed by the officers, the vehicle used to flee the scene of the drug deal, the foot chase and the apartment to which he ran and which was searched as part of the pursuit. As correctly determined by the Louisiana Fifth Circuit, there was no showing of prejudice that would have warranted or required severance under Louisiana law.

Jones also argues that joinder was inappropriate because the obliterated serial number offense was triable by a six-person jury while others required a twelve-person jury. Even if it could be tried by a six-person jury, which appears unlikely under La. Code Crim. P. art. 782, the claim would fail. Under Louisiana law, when related offenses are not triable by the same mode of trial, joinder is still permissible under La. Code Crim. P. art. 493.2 as long as all charges are tried by a twelve-person jury. State v. Woods, 4 So.3d 248, 252 (La. App. 5th Cir. 2009); State v. Young, 943 So.2d 1118, 1123 (La.

App. 1st Cir. 2006). Jones was tried by a twelve-person jury. Again, Louisiana law did not require severance.

Jones has not identified any error in the joinder of the charges against him that would have warranted objection by his counsel. Counsel's decision not to make a meritless objection does not constitute deficient or prejudicial performance. See Green, 160 F.3d at 1037 (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness); Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994)). He has not demonstrated an error in counsel's performance. He has not presented an error to be considered in a cumulative error analysis.

### b. Presentation of and Failure to Object to Other Crimes Evidence

Jones complains that his trial counsel erroneously introduced evidence that the vehicle he reportedly abandoned was stolen. This also allowed the jury to hear evidence of "other crimes." He also complains that his attorney did not object to police testimony that the firearms with obliterated serial numbers could have been used in numerous crimes.

On direct appeal, the Louisiana Fifth Circuit found these claims meritless. The court determined that, considering the overwhelming evidence of Jones's guilt, there was no demonstrated prejudice or impact on the verdict resulting from the presentation of

alleged other crimes evidence by counsel or the State. The claims were re-urged in the state court post-conviction proceedings in the cumulative error context and found repetitive.

During opening arguments, defense counsel made clear the defense theory that Jones was not the man police saw engaged in a drug transaction or pursued in the car and on foot.[31] He also argued that the car the perpetrator allegedly drove off in was owned by someone else and that person was never investigated as a potential suspect.

Defense counsel used his cross-examination of the State's witnesses to press the defense theory that Jones was not the perpetrator. The evidence indicated that the white Firebird convertible in which Jones allegedly fled was registered to Jones's cousin, Jerome Jones, Jr.[32] Defense counsel asked several of the State's witnesses about Jerome Jones and whether they investigated Jerome Jones as a potential suspect; they each responded that they had not.[33] Counsel also asked the officers if they recalled that the vehicle Jones was supposed to be driving had been reported stolen.[34] Sergeant Robert Gerdes recalled that the car had been reported stolen by Lukeisha Jones on the day after

---

[31]St. Rec. Vol. 3 of 6, Trial Transcript, p. 36, 7/16/08.

[32]Id., pp. 124, 129 (Sergeant Shane Klein), pp. 183, 185 (Sergeant Curtis Matthews); St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 205 (Lieutenant Robert Gerdes), p. 249 (Lukeisha Jones), 7/16/08.

[33]Id., pp. 125-26 (Sergeant Klein); p. 183 (Sergeant Matthews); St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 205 (Lieutenant Gerdes), 7/16/08.

[34]Id., p. 184 (Sergeant Matthews); St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 206 (Lieutenant Gerdes), 7/16/08.

the chase.[35]  Sergeant Gerdes testified that he was notified on April 23, 2005, that Ms. Jones reported as stolen the car involved in their investigation.  He directed another officer to attempt to locate the owner, Jerome Jones, but that was to no avail.  The officer was able to locate Jerome's mother, Sally Jones.  She advised the officer that Jerome had the car registered in his name; however, the car was in the possession of and driven by his cousin, Isaac Jones.[36]

Defense counsel also called Lukeisha Jones to testify about the allegedly stolen car.  She testified that her cousin, Jerome Jones, left the car in her care, and it was stolen around the same day she made the report.[37]  She also testified that she never saw Isaac Jones drive the car.[38]  On cross-examination, however, she indicated that she was not aware that Jerome's mother told police that Jerome never drove the car and that Isaac did.[39]  She was unable to describe her cousin Jerome or identify him when his picture was shown to her.[40]

Defense counsel's cross-examination reflects an effort to establish that Jones was not in possession of the car pursued by the police on the date in question.  Counsel

---

[35]St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 206 (Lieutenant Gerdes), 7/16/08.

[36]Id., pp. 206-07.

[37]Id., p. 250.

[38]Id., p. 251.

[39]Id., p. 253.

[40]Id., p. 256.

clearly was attempting to establish that the car had been stolen by someone other than Jones, adding doubt to the officers' identification of Jones as the perpetrator.

In this context, I cannot conclude that counsel's questions regarding the allegedly stolen vehicle acted to present evidence of other crimes committed by Jones. Under Louisiana law, to constitute impermissible other crimes or prior bad acts evidence, the evidence must unambiguously implicate the defendant in another crime <u>not integrally related to the instant offense</u>. <u>State v. Edwards</u>, 406 So.2d 1331, 1349 (La. 1981); <u>State v. Holmes</u>, 841 So.2d 80 (La. App. 4th Cir. 2003). While counsel's efforts were stifled by the less than credible testimony of Lukeisha Jones, counsel did not present evidence of other crimes that were attributable to Isaac Jones. Counsel asked the defense witnesses, and called Lukeisha Jones to testify, about the car being stolen. This clearly was in an effort to bolster the suggestion that someone other than Isaac Jones could have been in that car. There was no evidence presented or suggestion made by anyone that Isaac Jones stole the car.

With no other crimes evidence having been presented by counsel, Jones again has failed to establish any constitutional error by defense counsel. The fact that the defense strategy itself was not successful does not mean that counsel was deficient. <u>See Martinez</u>, 99 Fed. Appx. at 543; <u>Strickland</u>, 466 U.S. at 689 ("[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.")

Jones also contends that counsel erred in failing to object to the other crimes evidence presented through State's witnesses about the obliterated serial numbers on the guns.[41]  The admissibility of other crimes evidence or prior bad acts is addressed under La. Code Evid. art. 404(B).  In State v. Prieur, 277 So.2d 126 (La. 1973), the Louisiana Supreme Court held that evidence of other acts of misconduct is generally not admissible to show the defendant's bad character, but that such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding.  See also La. Code Evid. art. 404(B)(1); State v. Jackson, 625 So.2d 146, 148 (La. 1993).  As noted above, under Louisiana law, to constitute impermissible other crimes or prior bad acts evidence, the evidence must unambiguously implicate the defendant in another crime not integrally related to the instant offense.  State v. Edwards, 406 So.2d at 1349; State v. Holmes, 841 So.2d at 80.

Jones argues that "additional implications of other crimes were added by the police when they stated that firearms with obliterated serial numbers could have been utilized

---

[41]Because Jones is alleging that his counsel was ineffective for failing to object to the alleged other crimes evidence, the court must determine whether such objectionable evidence was presented.  Otherwise, habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992); see Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).

in numerous crimes."[42]  However, the record establishes that no one made such a broad statement.  Instead, the evidence indicated that two guns were found during the investigation, one under the hood of the car and one in the apartment.[43]  The jury was shown a video of the search of Jones's apartment, including the seizure of the 9 mm handgun found with the drugs in a closet[44] with its serial and model numbers scratched off. Nowhere in the officers' testimony do they accuse or imply that Jones was committing any other crime, other than those for which he was being tried.

Sergeant Klein, who chased Jones in the car and on foot and conducted the follow-up investigation, testified as an expert in the use, packaging, distribution and value of illegal narcotics.  Contrary to Jones's suggestion, he did <u>not</u> testify as a weapons expert. While viewing the video of the search of the apartment, Sergeant Klein pointed out "[w]hat's important on that gun, if you can see that silver thing on the side, that's where somebody scraped the serial number off of it."[45]  He also mentioned that "[i]t's often people scrape off that serial number because I mean that gun could have been involved in several different things."  He did <u>not</u> state that Jones obliterated the numbers or that the gun was used by Jones in other crimes.

---

[42]Rec. Doc. No. 1, p. 10.

[43]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 58, 79 (Sergeant Klein), 7/16/08.

[44]<u>Id</u>., pp. 79, 94 (Sergeant Klein), 7/16/08 (cited by Jones at Rec. Doc. No. 1, p. 10 as "R. p. 238, l. 24-25"); p. 176 (Sergeant Matthews); St. Rec. Vol. 4 of 6, Trial Transcript (continued), pp. 214-15 (Captain Scanlan), 7/16/08.

[45]<u>Id</u>., p. 79 (Sergeant Klein).

While explaining the purpose of the "Gun Control Act of 1969," Captain Scanlan explained that the serial and model numbers are used to track weapons sold in the marketplace. He stated "[t]hose numbers tend to get obliterated off, the serial numbers, by people who don't want you to trace the weapon, so they tend to obliterate them for that reason."[46] He did not testify that Jones obliterated the numbers nor did he link Jones to any prior bad act.

Jones also argues that Probation Officer Lisa Maise testified as to his guilt.[47] She did not. Maise testified about the conditions of Jones's probation after his prior conviction for possession of cocaine. She was asked if he would be allowed to carry a firearm during that probation period. Maise stated:[48]

> And he was made aware of all the conditions. He was made aware that he could not possess a firearm, that he could not be near a firearm because he was convicted of one of those crimes, which made it illegal for him to possess a firearm.

Maise did not say that Jones was guilty of the crime charged. She stated that it was illegal for someone in his position to possess a firearm.

The reasons given for obliterating serial numbers and the testimony regarding the conditions of Jones's probation do <u>not</u> fit the definition of prohibited other crimes evidence under Louisiana law. The references were not introduced to impugn Jones's

---

[46] St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 215 (Captain Scanlan), 7/16/08.

[47] Rec. Doc. No. 1, p. 11.

[48] St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 228 (Lisa Maise), 7/16/08.

character or depict him as a bad man. Instead, the evidence and testimony were presented to establish integral parts of the gun crimes with which he was charged, as a previously convicted felon in possession of a weapon and as a person in possession of a weapon with an obliterated serial number. See Robinson v. Whitley, 2 F.3d 562, 566-67 (5th Cir. 1993) (evidence was admissible under Louisiana law where it had independent relevance as an integral part of the crime or the sequence of events) (citing State v. Edwards, 406 So.2d at 1350-51 and State v. Guillory, 201 La. 52, 9 So.2d 450 (La. 1942)).

Without some showing that the testimony and evidence were objectionable, Jones has failed to establish deficient performance by counsel. Counsel is not required to make a meritless objection. See Green, 160 F.3d at 1037 (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness); Wood, 503 F.3d at 413. There was no error in counsel's performance in failing to object to testimony that was not inadmissable.

Furthermore, as determined by the Louisiana courts, Jones has not established prejudice arising from counsel's failure to object to the officers' testimony. I have reviewed the evidence in connection with Jones's sufficiency of the evidence claim, and I do not find that the verdict was attributable to counsel's failure to object to these comments by the police officers.

Jones has failed to establish a deficient or prejudicial performance by his defense counsel in connection with the alleged evidence of other crimes admitted at his trial. The denial of relief on this claim was not contrary to, or an unreasonable application of, Strickland. There is no error to be considered in a cumulative error analysis.

### c. Failure to Object to Expert Testimony

Jones argues that his counsel failed to object to the expert testimony of Sergeant Klein, Captain Scanlan and Lisa Maise. On direct appeal, the Louisiana Fifth Circuit found these claims meritless. The court determined that Jones failed to provide any legal citation to support his arguments that the testimony of Sergeant Klein, Lisa Maise or Captain Scanlan was improper or unfairly prejudiced him.

Jones fails again in this court to raise any particular concern about the testimony of these officers. First, I note that Lisa Maise was not offered nor did she testify as an expert witness. I have already addressed her testimony regarding the conditions of Jones's probation and her statement regarding the illegality of his possession of a firearm. Jones has identified nothing in that testimony that was objectionable.

As to Sergeant Klein and Captain Scanlan, Jones's arguments are conclusory and without explanation as to why the officers were not qualified to testify as experts in their fields or how their testimony was improper. Sergeant Klein has been accepted in at least one other reported case in Jefferson Parish as an expert in the field of packaging, quantity and distribution of narcotics. State v. Massey, 71 So.3d 367 (La. App. 5th Cir. 2011).

Captain Scanlan has been and continues to be accepted as an expert in forensic science, particularly in the field of firearms and tool mark examination, as in this case. See, e.g., State v. Franklin, 87 So.2d 860 (La. App. 5th Cir. 2011); State v. Funes, 88 So.3d 490 (La. App. 5th Cir. 2011); State v. Marinello, 49 So.3d 488 (La. App. 3d Cir. 2010); State ex rel. D.W., 47 So.3d 1048 (La. App. 5th Cir. 2010); State v. Page, 28 So.3d 442 (La. App. 5th Cir. 2009); State v. Parks, 2 So.3d 470 (La. App. 5th Cir. 2008); State v. Johnson, 957 So.2d 833 (La. App. 5th Cir. 2007); State v. Cambre, 939 So.2d 446 (La. App. 5th Cir. 2006); State v. Parker, 901 So.2d 513 (La. App. 5th Cir. 2005). It is reasonable for an experienced attorney to decide not to challenge the credentials of such experts when asked to testify in their specialty fields.

In addition, the stipulation to their respective expertise was merely an agreement to facts about their training, which the State could and did easily establish with the training and certification information presented. There was no apparent advantage to Jones for his counsel to refuse to agree to the officers' expertise and thereby permit the prosecution to accentuate their qualifications to the jury. Jones has not shown deficient performance or the necessary prejudice to support an ineffective assistance of counsel claim regarding the stipulation to the officers' acceptance as experts. See Berry v. King, 765 F.2d 451, 454-55 (5th Cir. 1985) (a habeas petitioner must show prejudice caused by a stipulation made by his trial counsel).

Jones also contends that Captain Scanlan's testimony about the "CSI effect" was "junk science" and should have been objected to by defense counsel. In <u>Daubert</u>, the Supreme Court replaced the "general acceptance" standard of expert testimony with a standard that charges the trial court to act as "gatekeeper" ensuring the relevance and reliability of scientific expert testimony. The question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. <u>Butler v. Kitchens Brothers Mfg.</u>, 253 Fed. Appx. 395, 397-98 (5th Cir. 2007) (citing <u>Burleson v. Tex. Dept. of Crim. Justice</u>, 393 F.3d 577, 584 (5th Cir. 2004)). In an effort to prevent jurors from hearing expert opinions based on untested theories or invalid methods, <u>i.e.</u>, "junk science," the Supreme Court held in <u>Daubert</u> that, before a party can present expert testimony based on "scientific knowledge," the witness must demonstrate to the trial court, in its capacity as "gatekeeper," that the proposed expert testimony is based on "good" science and, therefore, sufficiently reliable. <u>Daubert</u>, 509 U.S. at 595-99. This requirement ensures that knowledge offered is "more than subjective belief or unsupported speculation." <u>Id</u>. Expert testimony must be supported by "appropriate validation—i.e., 'good grounds,' based on what is known." <u>Id</u>. ( quoting <u>Daubert</u>, 509 U.S. at 590).

The court's gatekeeping duties, however, are a "preliminary assessment." <u>Daubert</u>, 509 U.S. at 592. Once that testimony is admitted, it is for the jury to resolve the credibility and reliability of the expert's testimony. "'[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the <u>weight</u> to be assigned

that opinion rather than its <u>admissibility</u> and should be left for the jury's consideration.'" (emphasis in original) <u>Primrose Operating Co. v. Natl. American Ins. Co.</u>, 382 F.3d 546, 562 (5th Cir. 2004) (quoting <u>United State v. 14.38 Acres of Land</u>, 80 F.3d 1074, 1077 (5th Cir. 1996)). Assessment of the weight of the evidence is for the jury.

The Louisiana Supreme Court has adopted the <u>Daubert</u> analysis, <u>State v. Foret</u>, 628 So.2d 1116, 1121, 1123 (La. 1993), in instances where the methodology used by the expert is being questioned. <u>Dinett v. Lakeside Hospital</u>, 811 So.2d 116, 119 (La. App. 4th Cir. 2002).

The record reflects that the investigation disclosed no DNA or fingerprint evidence to link Jones to the guns, drugs, car and other evidence seized. Captain Scanlan testified that it was not uncommon for investigators to find little or no such scientific evidence on the type of evidence, particularly the guns, seized in Jones's case. In doing so, he made the following comment:[49]

> The CSI effect is something I'm familiar with because I'm doing research on it with my Ph.D. dissertation. And basically what the CSI effect is, we've found throughout history life will tend to imitate Hollywood. And what's happened is since the advent of CSI, everyone in the criminal justice system, jurors, judges, police officers, attorneys, have a skewed reality of what we can actually do in forensic science. It's just like you watch ER and the things they do to save people's lives doctor's can't do that all the time. It's the same thing in forensic science. The best example I give is that on CSI a crime scene investigator will go out and they will fingerprint a hundred things, and they'll get a hundred beautiful fingerprints. In the crime lab we fingerprint a hundred things in the hope of getting one usable

---

[49]St. Rec. Vol. 4 of 6, Trial Transcript (continued), pp. 220-21, 7/16/08.

42

fingerprint. So we do the same work. It's just the results aren't always there. It just wouldn't make good television, what happens in reality.

Jones has offered no support for his suggestion that this comment on the CSI effect is "junk science." The United States Fifth Circuit has recognized the existence of the phenomenon known as the "CSI effect."

> "The 'CSI effect' is a term that legal authorities and the mass media have coined to describe a supposed influence that watching the television show CSI: Crime Scene Investigation has on juror behavior. Some have claimed that jurors who see the high-quality forensic evidence presented on CSI raise their standards in real trials, in which actual evidence is typically more flawed and uncertain." Tom R. Tyler, Viewing CSI and the Threshold of Guilt: Managing Truth and Justice in Reality and Fiction, 115 Yale L.J. 1050, 1050 (Mar. 2006). Professor Tyler's article explains that the existence of a "CSI effect" is plausible but has not been proven empirically.

United States v. Fields, 483 F.3d 313, 355 n.39 (5th Cir. 2007); United States v. Farhane, 634 F.3d 127, 157-58 (2d Cir. 2011) ("Similarly, it was plausible for the prosecutor to think that a juror who regularly watched television shows in which forensic science conclusively solved crimes might be more inclined to demand such evidence in order to convict.") (citing Fields, 483 F.3d at 355 n.39). I have located no authority that has declared this theory to be "junk science" such that an objection from Jones's counsel was required.

In this case, Captain Scanlan's testing of the weapons and other evidence and his methodology apparently were not at issue. Jones challenges only Scanlan's reference to the "CSI effect" as an explanation for why the lack of forensic evidence should not concern the fact-finder. Jones's trial counsel used this lack of forensic evidence to

support his defense theory that there was <u>no</u> such evidence because Jones was not the perpetrator.  The jury's decision to find that Jones was the perpetrator based on the substantial other evidence was well within the jury's authority.

Jones has not demonstrated that his trial counsel erred in failing to challenge Captain Scanlan's statements under <u>Daubert</u>.  He has not pointed to either deficient performance or prejudice regarding counsel's stipulation to the expertise of the Scanlan or Klein and the decision not to further challenge their expertise, theories or methodology.  There is nothing in the record to demonstrate that counsel's decision to stipulate to their expertise was anything other than sound trial strategy.  Furthermore, "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment."  <u>Ford v. Cockrell</u>, 315 F. Supp.2d 831, 859 (W.D. Tex. 2004).  Counsel's professional or tactical judgment is not to be questioned in hindsight.

Recognizing the deferential standards set forth above, the state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  Jones has proven no error by his counsel nor any basis to address the cumulative error doctrine with respect to this claim.

2. <u>Other Trial Errors</u>

Jones asks this court to consider the overall weakness of the State's case in considering the cumulative errors of counsel. None of these alleged trial errors are

attributed to counsel's performance specifically. Jones instead argues that these other trial errors somehow also contributed to the verdict and enhanced the negative effects of counsel's errors. Having found no deficient or prejudicial performance by counsel in the errors alleged, there is no reason to consider the cumulative effect of these other claims together with "errors" by counsel. These other claims also have nothing to do with the standards set forth in <u>Strickland</u> by which the performance of counsel is evaluated. Nevertheless, to be clear, I have considered each alleged trial error below and find no individual or cumulative basis for relief under the appropriate standards.

a.  <u>State Relied on Unlawfully Seized Evidence</u>

Jones alleges that the State relied on unlawfully seized evidence from the vehicle because the search was done without a warrant or exception to the warrant requirement under the directives of <u>Arizona v. Gant</u>, 556 U.S. 332 (2009). He further contends that, had the evidence seized from the car been suppressed, including the keys used to locate the apartment, then anything recovered from the apartment would also have fallen under the "fruit of the poisonous tree" doctrine.

Jones's arguments under <u>Gant</u> are misplaced, because <u>Gant</u> is not applicable to his situation. In <u>Gant</u>, the Supreme Court held that police may search a vehicle incident to a recent occupant's lawful arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. <u>Id.</u> at 349-351. Without these justifications,

a search of an arrestee's vehicle is unreasonable, unless police obtain a warrant or show that another exception to the warrant requirement applies.  Id.

In reaching its holding, the Gant Court considered the appropriateness of a vehicular search incidental to a lawful arrest.  Id. at 338-39.  The Court stated that its prior precedent was intended to authorize "police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."  Id. at 343.  The Court also concluded "that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"  Id.

The instant case is distinguishable from the matters considered in Gant.  Jones was not arrested on the day of the drug transaction and searches of the vehicle and apartment.[50]  He therefore was not detained or arrested when his cousin's car was searched for evidence.  I can find no authority that would impose Gant's holding in a situation where the perpetrator fled the scene.

In his current petition to this court, Jones also attempts to prompt review of the underlying Fourth Amendment claim, but such review is not appropriate in this court. Fourth Amendment violations are generally not cognizable on federal habeas review. Stone v. Powell, 428 U.S. 465 (1976).  In Stone, the Supreme Court held that "where the

---

[50]St. Rec. Vol. 1 of 8, Appearance Bond, 7/11/07 (showing arrest date of 7/9/07).

State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." (footnotes omitted) Id., at 494. The "full and fair" hearing contemplated by Stone refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court. Davis v. Blackburn, 803 F.2d 807, 808 (5th Cir.1986); O'Berry v. Wainwright, 546 F.2d 1204, 1213 (5th Cir. 1977).

The United States Fifth Circuit has interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978); Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002), cert. denied, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." Caver, 577 F.2d at 1192. Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the Stone prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. Janecka, 301 F.3d at 320-21. Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the Stone bar to apply. Id., at 320.

The Fifth Circuit has also held that the <u>Stone</u> bar applies despite an error by the state court in deciding the merits of the Fourth Amendment claim. <u>Swicegood v. Alabama</u>, 577 F.2d 1322, 1324-1325 (5th Cir. 1978). "[I]n the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rationale of <u>Caver</u> dictates that <u>Swicegood</u>'s application of <u>Stone</u> despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims." <u>Williams v. Brown</u>, 609 F.2d 216, 220 (5th Cir. 1980); <u>Janecka</u>, 301 F.3d at 321.

To obtain post-conviction relief in federal court, a habeas petitioner must plead and prove that the state court proceeding was inadequate. <u>Davis</u>, 803 F.2d at 1372. Jones does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims. Moreover, this court has found that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." <u>Bailey v. Cain</u>, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ( Duval, J.) (order adopting referenced Report and Recommendation).

The record in this case demonstrates that Jones had multiple opportunities to litigate his challenges to the searches and seizure of evidence and was in fact provided review of his Fourth Amendment claim pretrial and on direct appeal. The state trial court

conducted a full hearing on Jones's motion to suppress on May 19, 2008.[51] As to the car,

Sergeant Klein testified that Jones fled the scene in his white convertible.[52] When he

crashed the vehicle, he got out and ran. After losing track of Jones, Sergeant Klein

returned to the vehicle, and he and the other officers found a bag of marijuana that

apparently had fallen out in Jones's haste to exit the car.[53] The officers also located

marijuana in the car, a gun under the hood, Jones's cell phone and a traffic citation issued

in Jones's name.[54] Jones had also left the keys in the ignition.[55] After investigating the

apartment, the officers drove the Firebird to the detective bureau.[56] Jones's counsel

thoroughly cross-examined Sergeant Klein on each representation and statement.[57] The

state trial court denied Jones's motion finding that nothing was unconstitutionally

obtained from the car.[58]

The Louisiana Fifth Circuit later considered Jones's arguments on direct appeal

where he challenged the denial of the motion to suppress as it related to the vehicle

---

[51]St. Rec. Vol. 2 of 6, Motion Hearing Transcript, 5/19/08; St. Rec. Vol. 1 of 6, Motion to Suppress, 3/24/08; Motion Hearing Minutes, 5/19/08.

[52]Id., p. 9 (Sergeant Klein).

[53]Id., p. 11 (Sergeant Klein).

[54]Id., pp. 11, 16 (Sergeant Klein).

[55]Id., p. 11 (Sergeant Klein).

[56]Id., p. 18 (Sergeant Klein).

[57]Id., pp. 20-21, 27-28.

[58]Id., p. 39; St. Rec. Vol. 1 of 6, Motion Hearing Minutes, 5/19/08.

search.[59]   Relying on United States Supreme Court and Louisiana precedent, the Louisiana Fifth Circuit found that the vehicle was readily movable, as evidenced by the keys left in the ignition, and the officers had probable cause to believe that the vehicle contained contraband which was sufficient to satisfy the automobile exception to the warrant requirement under the Fourth Amendment.[60]   As outlined previously, Jones did not pursue further review of that claim until his post-conviction application, which review was barred as repetitive under La. Code Crim. P. art. 930.4.

The record demonstrates that Jones was provided with ample opportunity to present his claims, although his efforts were unsuccessful and perhaps procedurally faulty.   The state courts were not required by the Constitution to conduct in-court hearings each time he raised his Fourth Amendment claims for due process standards to have been satisfied and for the <u>Stone</u> bar to apply.   <u>See</u> <u>Woodard v. Thaler</u>, 702 F. Supp.2d 738, 759 (S.D. Tex. 2010) (state courts' finding that Fourth Amendment claim was procedurally barred did not undermine the "opportunity for full and fair litigation."); <u>Williams v. Brown</u>, 609 F.2d at 220.

Thus, Jones is not entitled to have this federal habeas court review his Fourth Amendment claims to search for some contrived error.   Because he had the opportunity

---

[59]<u>State v. Jones</u>, 33 So.3d at 316; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 09-KA-688, pp. 10-13, 2/9/10.

[60]<u>State v. Jones</u>, 33 So.3d at 317-18; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 09-KA-688, pp. 11-12, 2/9/10.

for a full and fair hearing in the state courts, <u>Stone</u> bars consideration of his Fourth Amendment claims here.

### b. Suggestive Single-Photograph Identification Process

Jones argues that the identification process was unduly suggestive. He contends that the single photograph shown to the officers, presumably Sergeants Klein and Matthews, was unduly suggestive, especially in light of Sergeant Klein's nonconforming description and the physical description read by the officers on the traffic citation.

As with the seized evidence, Jones raised this issue in his pretrial motion to suppress. The state trial court considered the claims in the hearing on Jones's motion to suppress on May 19, 2008.[61] Sergeant Klein testified that he saw the person he later identified as Jones engaged in a hand-to-hand drug transaction.[62] Jones jumped into his vehicle and sped off, nearly hitting Klein and another officer. After he crashed the vehicle, Jones got out and ran, and Klein followed him on foot.[63] Sergeant Klein chased Jones over several fences until Jones stopped in one backyard, seemingly to give up. Sergeant Klein stopped at first and the two men "were looking right at each other."[64] As Sergeant Klein attempted to jump the last fence to approach him, Jones took off, jumped

---

[61]St. Rec. Vol. 2 of 6, Motion Hearing Transcript, 5/19/08; St. Rec. Vol. 1 of 6, Motion to Suppress, 3/24/08; Motion Hearing Minutes, 5/19/08.

[62]<u>Id</u>., p. 8 (Sergeant Klein).

[63]<u>Id</u>., p. 9 (Sergeant Klein).

[64]<u>Id</u>., pp. 9, 27 (Sergeant Klein).

a ten-foot fence and ran toward apartment building number twenty-six near where the chase started.[65]  Sergeant Klein radioed a description out, and the officers were unable to locate Jones in the complex.

Sergeant Klein also testified that, on his way back to the site of the crashed vehicle, he collected the drugs that Jones had discarded during the chase.[66]  Upon his return to the car, he and the other officers found a bag of marijuana that had fallen out in Jones's haste to exit the car.[67]  The officers also located marijuana in the car, a gun under the hood, Jones's cell phone and a traffic citation issued in Jones's name.[68]  Jones had also left the keys in the ignition.[69]  The traffic citation contained a physical description which was similar to that of the man Sergeant Klein chased.[70]  The citation was issued to Isaac Jones.  Based on his broadcast description, a man fitting the description was stopped by officers in the area.[71]  He was with a woman and child.  He was nervous, sweating, and his heart was racing.[72]  Because he did not have "cornrows"

---

[65]Id., pp. 9-10 (Sergeant Klein).

[66]Id., pp. 10-11 (Sergeant Klein).

[67]Id., p. 11 (Sergeant Klein).

[68]Id., pp. 11, 16 (Sergeant Klein).

[69]Id., p. 11 (Sergeant Klein).

[70]Id., pp. 11, 20-21 (Sergeant Klein).

[71]Id., p. 12 (Sergeant Klein).

[72]Id., pp. 12, 24 (Sergeant Klein).

in his hair, the officers let him go before reporting the incident to Sergeant Klein.[73]  A

short time later, maybe 15 minutes, while he was still at the scene, he was shown a color

photograph of Isaac Jones, and he recognized the person as the man he was chasing.[74]

Jones's counsel thoroughly cross-examined Sergeant Klein on each representation and

statement.[75]  The state trial court denied Jones's motion on this issue, finding that the

identification was not unconstitutionally obtained, and the accuracy of the identification

was a matter of credibility.[76]

These arguments were asserted on direct appeal in the state courts.  The Louisiana

Fifth Circuit issued the last reasoned decision denying the claims as meritless.  Citing

Manson v. Brathwaite, 432 U.S. 98 (1977), and related case law, the court held that, even

if the single photograph process was suggestive, there was no substantial likelihood of

an irreparable misidentification.[77] Applying the Manson factors, the court found that

Sergeant Klein had ample opportunity to view Jones, his degree of attention was high,

the unwavering description he gave matched Jones in all respects, except the hairstyle,

---

[73]Id., pp. 12, 22 (Sergeant Klein).

[74]Id., pp. 16-17, 20, 26, 27 (Sergeant Klein).

[75]Id., pp. 20-21, 27-28.

[76]Id., p. 39; St. Rec. Vol. 1 of 6, Motion Hearing Minutes, 5/19/08.

[77]State v. Jones, 33 So.3d at 319-20; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 09-KA-688, pp. 16, 2/9/10.

and the identification was made a short time after the encounter.[78]  The court found

credible the testimony that Jones had time to change his hairstyle in the 15 minutes

before he was stopped by other officers.[79]  Jones did not seek further review of this

ruling.  He raised the claim again in his post-conviction application, which review was

barred as repetitive under La. Code Crim. P. art. 930.4.

The admissibility of an eyewitness's photographic identification is a mixed

question of law and fact.  <u>Coleman v. Quarterman</u>, 456 F.3d 537, 544 (5th Cir. 2006)

(citing <u>Livingston v. Johnson</u>, 107 F.3d 297, 309 (5th Cir. 1997)); <u>Sumner v. Mata</u>, 455

U.S. 591, 597 (1982) ("[T]he ultimate question as to the constitutionality of the pretrial

identification procedures . . . is a mixed question of law and fact . . . .").

In <u>Simmons v. United States</u>, 390 U.S. 377 (1968), the United States Supreme

Court established a two-prong test for the exclusion of identifications based on

impermissibly suggestive photo arrays which deny due process.  The first prong requires

determination of whether the identification procedure was impermissibly suggestive.  If

it is not, the inquiry ends.  If it is, a separate inquiry must be made as to whether, under

the totality of the circumstances, the suggestiveness leads to a substantial likelihood of

irreparable misidentification.

---

[78]<u>State v. Jones</u>, 33 So.3d at 320-21; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 09-KA-688, pp. 16-17, 2/9/10.

[79]<u>State v. Jones</u>, 33 So.3d at 320; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 09-KA-688, pp. 16-17, 2/9/10.

In <u>Manson v. Brathwaite</u>, 432 U.S. at 114-16, relied upon by the Louisiana Fifth Circuit, the United States Supreme Court reaffirmed several factors enumerated in <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972), that should be considered when reviewing the reliability of a witness's identification. These include: (1) the opportunity of the witness to view the subject; (2) the witness's degree of attention; (3) the accuracy of the description; (4) the witness's level of certainty; (5) the elapsed time between the crime and the identification; and (6) the corrupting influence of the suggestive identification itself. <u>Passman v. Blackburn</u>, 652 F.2d 559, 570-71 (5th Cir. 1981); <u>Herrera v. Collins</u>, 904 F.2d 944, 946 (5th Cir. 1990).

In this court, Jones presents only a conclusory argument that the single photograph showing was suggestive under <u>Simmons</u>. Assuming arguendo that it was, such a determination does not resolve the issue. As the Louisiana Fifth Circuit noted, even if the showing was suggestive, the reliability must be considered using the <u>Manson</u> factors to determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification. Sergeant Klein's testimony from the pretrial hearing on the motion to suppress, outlined above, and his identical testimony at trial,[80] clearly establishes that it was not.

---

[80]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 51 (clear view of him during drug deal), pp. 54-55, 56, 115 (clear view of him during foot chase), pp. 55, 112 (during daylight), pp. 59-60, 122 (officers stop nervous man matching description), pp. 65-66, 69-70, 115 (traffic citation with description and name led to photograph identification) (Sergeant Klein), 7/16/08.

The record establishes, as also found by the Louisiana Fifth Circuit,[81] that Sergeant Klein saw the man later identified as Jones at close range during the drug transaction. Because of the nature of his duties, and his focus during the foot chase, Sergeant Klein paid close attention to the identity, clothing and actions of the person he was chasing. His verbal description of Jones, made before the traffic citation was located, never varied, including his description of the hair style, which proved to be different from the style later seen by the other officers. In addition, both his broadcast description and the photographic identification were made within 15 minutes of his last sighting of Jones.

Even assuming that some suggestiveness existed, a finding this court does <u>not</u> make, the testimony and record as a whole demonstrate that there was no substantial risk of misidentification, and federal habeas relief is wholly unwarranted. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Having found no error, there is no basis to consider the cumulative effect doctrine.

### c. Insufficient Evidence to Support the Verdicts

Jones makes a general argument that the State relied solely on circumstantial evidence to prove constructive possession of most of the narcotics and the firearms. He does not specify which conviction he is challenging or which argument applies to which conviction. His claims in that regard are wholly conclusory.

---

[81] <u>State v. Jones</u>, 33 So.3d at 320-21; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 09-KA-688, pp. 16-17, 2/9/10.

His more specific arguments, though still not aligned with any particular charge or conviction, are that no one actually saw Jones in possession of the firearms, one of which was recovered from the car that was not registered to him. He further contends that the rest of the State's case was based on documents found near the drugs and firearms in the car that belonged to Jones's cousin. He also suggests that there was no proof that the drugs were in the car when he received the traffic citation. Jones concludes that there was no evidence that he was in constructive possession of the drugs found in the car, that he was more than a visitor in the apartment where the other drugs were recovered, or of the last time he was in that apartment.

Jones raised a more succinct version of this claim on direct appeal. The Louisiana Fifth Circuit held that the evidence was sufficient to prove each of the crimes for which he was convicted.[82] The court resolved that he was in constructive possession of the .40 caliber Glock found under the hood of the car, because the evidence showed that he regularly drove and repaired the car, thereby exercising dominion and control over the car and constructive possession of the gun.[83] The court also resolved that his guilty knowledge was shown by his flight from officers who saw him engaged in a drug transaction and by the evidence proving that drug dealers regularly carry and conceal

---

[82]State v. Jones, 33 So.3d at 314-17; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 09-KA-688, pp. 6-10, 2/9/10.

[83]State v. Jones, 33 So.3d at 315; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 09-KA-688, pp. 7, 8, 2/9/10.

guns.[84]  He was also seen discarding narcotics during the chase, and the narcotics were packaged for distribution.  The investigation also located items used in the packaging of drugs for distribution.

The court also found that the evidence was sufficient to prove the other convictions for possession of a gun with an obliterated serial number, possession of marijuana with intent to distribute, and possession of cocaine.[85]  The court determined that the evidence showed a connection between Jones and the apartment, including the fact that he had a key to the apartment on the same ring as his car keys, and the presence of his clothing, pictures, credit cards, a cell phone bill and the temporary tag for the white convertible Firebird in which the keys, drugs, gun, traffic citation and Jones's cell phone were found.  The court determined that this evidence established dominion and control sufficient to prove constructive possession and awareness of the seized drugs and gun. Having already found that Jones had dominion and control over the car, the court further resolved that Jones had constructive possession of the marijuana cigar found in the ashtray.  The court also found constructive possession of the marijuana discarded by Jones during the foot chase.

---

[84]State v. Jones, 33 So.3d at 315; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 09-KA-688, pp. 7-8, 2/9/10.

[85]State v. Jones, 33 So.3d at 316-17; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 09-KA-688, p. 10, 2/9/10.

Jones did not seek further review of this ruling. He raised the claim again in his post-conviction application, which review was barred as repetitive under La. Code Crim. P. art. 930.4.

A claim of insufficient evidence presents a mixed question of law and fact. Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Under Jackson v. Virginia, 443 U.S. 307 (1979), this court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Id., 443 U.S. at 319; Perez, 529 F.3d at 594; Williams v. Cain, 408 Fed. Appx. 817, 821 (5th Cir. 2011). Thus, to determine whether commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. See McDaniel v. Brown, 558 U.S. 120, __, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial.") (quoting Jackson, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does <u>not</u> include review of the <u>weight</u> of the evidence or the <u>credibility</u> of the witnesses, because those determinations are the exclusive province of the jury. <u>United States v. Young</u>, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993); <u>see also</u> <u>Jackson</u>, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005).

A reviewing federal habeas court is <u>not</u> authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

Jones was convicted on four counts: possession of a firearm having been previously convicted of a felony; possession of marijuana with intent to distribute; possession of cocaine in excess of 28 to 199 grams; and possession of a firearm with obliterated serial numbers.

(i)  Felon in Possession of a Firearm

In Louisiana, the offense of being a previously convicted felon in possession of a firearm is defined as follows: "It is unlawful for any person who has been convicted of . . . any violation of the Uniform Controlled Dangerous Substances law which is a felony, . . . to possess a firearm or carry a concealed weapon." La. Rev. Stat. Ann. § 14:95.1(A). To sustain a conviction for possession of a firearm by a convicted felon, the State had to prove the following elements of the offense: (1) possession of a firearm, (2) prior conviction for an enumerated felony, (3) absence of the ten-year statutory limitation period, and (4) the general intent to commit the crime.  State v. Caffrey, 15 So.3d 198 (La. App. 5th Cir. 2009); State v. Ray, 961 So.2d 607 (La. App. 2d Cir. 2007); State v. Robert, 956 So.2d 750 (La. App. 2d Cir. 2007).  Under La. Rev. Stat. Ann. § 14:2(A)(4), a felony is defined as a crime for which the offender may be sentenced to death or imprisonment at hard labor.[86]

Specific intent is not necessary to conviction for being a previously convicted felon in possession of a firearm.  Instead, general intent is all that is required, and it may be proved through either the actual or constructive possession of a firearm.  State v. Law, 46 So.3d 764, 770 (La. App. 2d Cir. 2010); State v. Jamerson, 1 So.3d 827 (La. App. 2d

---

[86]Jones had a prior conviction for possession of cocaine, and his sentence expired less than ten years before commission of this offense. St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 227 (Lisa Maise), 7/16/08. Cocaine is a Schedule II narcotic. La. Rev. Stat. Ann. § 40:964, Schedule II(A)(4). Possession of cocaine is a felony that is punishable by confinement with or without hard labor for not more than five years, and may be sentenced to pay a fine of not more than $5,000. La. Rev. Stat. Ann. § 40:967(C)(2). Applying Section 14:951, it was therefore unlawful for Jones to possess a weapon at the time of his offense.

Cir. 2009). Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. State v. Law, 46 So.3d at 770. Constructive possession involves an element of awareness or knowledge that the firearm is there and the general intent to possess it. Id. General intent may be inferred from the circumstance of the transaction and proved by direct or circumstantial evidence. State v. Brokenberry, 942 So.2d 1209 (La. App. 2d Cir. 2006); State v. Culp, 17 So.3d 429 (La. App. 2d Cir. 2009). Determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Brown, 92 So.3d 579, 585 (La. App. 2d Cir. 2012) (citing State v. Huizar, 414 So.2d 741 (La. 1982)).

Jones's only challenge to the evidence under this claim is to the finding that he was knowingly in possession of a firearm. He does not challenge the other factors to be proven. Because neither gun was on his person, the evidence must have established his constructive possession through a showing of his dominion and control. The trial transcript convincingly demonstrates that the evidence was more than sufficient to support the jury's verdict that he was in constructive possession of the firearm in the car. While I recognize that Jones was also in possession of a second gun with an obliterated serial number which was found in the apartment, his possession of that gun is more appropriately addressed in connection with his conviction for that charge.

The evidence at trial established that, upon discovery that police officers were monitoring his hand-to-hand drug transaction, Jones jumped into the white convertible

Firebird and recklessly drove off.[87]  He jumped out of the car, leaving the keys in the ignition, and his key ring also contained an apartment key later used to locate Jones's apartment and the other evidence seized.[88]  When Sergeant Klein and others returned to the car, they discovered a bag of marijuana packaged the same as those discarded by Jones during the foot chase.[89]  The officers then searched the vehicle and discovered among other things more marijuana, the gun under the hood, the traffic citation and a cell phone later determined to belong to Jones.[90]  The evidence also showed that the same car was often seen parked in front of the apartment to which Jones had a key and where his clothing and other belongings later were found.[91]

The record also contains the testimony of Sergeant Gerdes, who received notification on April 23, 2005, that Lukeisha Jones reported the Firebird stolen.[92]  At his direction, another officer located Sally Jones, the mother of Jerome Jones, the registered owner of the car.  She advised the officer that Jerome had the car registered in his name, and that the car was in the possession of and driven by his cousin, Isaac Jones.[93]  The

---

[87]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 50-53 (Sergeant Klein), 7/16/08.

[88]Id., pp. 53-54, 58, 68 (Sergeant Klein).

[89]Id., p. 57 (Sergeant Klein).

[90]Id., p. 58-59, 63, 64-65, 67 (Sergeant Klein).

[91]Id., p. 70-71 (Sergeant Klein).

[92]St. Rec. Vol. 4 of 6, Trial Transcript (continued), p. 206 (Lieutenant Gerdes), 7/16/08.

[93]Id., pp. 206-07.

evidence established a connection between Jones and the car and its contents, including the narcotics and the gun found under the hood.

Contrary to Jones's suggestion, there was no requirement that the drugs be in the car in 2004 when the traffic citation was issued for the State to prove dominion. Instead, the credible evidence showed his dominion and control over the vehicle while the drugs and gun were in the car. Clearly, Sergeant Klein saw Jones enter and exit the car on the day of the drug transaction and chase. The testimony painted him as the regular driver of the car. The jury apparently did not find Lukeisha Jones credible, especially since she could not even describe or identify Jerome Jones. The State also produced evidence that Isaac Jones paid for the expensive replacement convertible top.[94] A reasonable jury could find that this was sufficient evidence to establish dominion and control over the car in which the gun and other items were found.

As discussed above, as to Jones's guilty knowledge, the jury heard testimony that drug dealers often carry guns when conducting their transactions and conceal the weapons to avoid their detection. This testimony and the occurrence of the drug transaction and subsequent car and foot chase were sufficient for a jury to find general intent and guilty knowledge arising from the circumstances. State v. Brown, 966 So.2d 727, 744-45 (La. App. 2d Cir. 2007). In Louisiana, general intent or guilty knowledge can be found where the evidence demonstrates that a person is the regular driver of the

---

[94]Id., p. 105.

vehicle and exercises control over the vehicle on a regular basis, even if he is not the owner. <u>State v. Frank</u>, 549 So.2d 401, 405 (La. App. 3d Cir. 1989). Possession of the keys to a vehicle containing contraband also has been held sufficient to establish constructive possession. <u>State v. Washington</u>, 90 So.3d 1157, 1162 (La. App. 5th Cir. 2012) (citing <u>United States v. Martinez</u>, 588 F.2d 495, 498-99 (5th Cir. 1979)).

In addition, a defendant's flight from police can be considered evidence of guilty knowledge. <u>State in the Interest of J.W.</u>, __ So.3d __, 2012 WL 2043246, at *5 (La. App. 4th Cir. Jun. 6, 2012) (citing <u>State v. Petit</u>, 463 So.2d 749 (La. App. 4th Cir.1985)). "A defendant's attempt to flee from police is also viewed as evidence of guilty knowledge. <u>See</u> <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124-25 [. . .] (2000), in which the United States Supreme Court commented that '[h]eadlong flight-wherever it occurs-is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.'" <u>Id</u>., at *5.

Jones has failed to establish that the state court erred in finding sufficient evidence to prove him to be a felon in possession of the weapon in the car. The state court's denial of relief on this issue was not contrary to, or an unreasonable application of, <u>Jackson</u>.

Jones also challenges the sufficiency of the evidence to prove his constructive possession of the narcotics and obliterated gun seized from the apartment, claiming that nothing linked him to the apartment or proved him to be more than a visitor there. Each

of these convictions are linked to his dominion and control over the apartment. For ease of presentation, each conviction will be addressed separately.

(ii) <u>Possession of Marijuana with Intent to Distribute</u>

In Louisiana, to convict a defendant for possession of marijuana with intent to distribute, the State must prove beyond a reasonable doubt that the defendant knowingly and intentionally possessed the marijuana and had the requisite intent to distribute it. <u>State v. Fobb</u>, 91 So.3d 1235, 1242 (La. App. 3d Cir. 2012) (citing <u>State v. Hollier</u>, 37 So.3d 466, 470 (La. App. 3d Cir. 2010)). Intent to distribute a controlled substance like marijuana may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of the intent to distribute. <u>State v. Bobo</u>, 77 So.3d 1, 5 (La. App. 2d Cir. 2011) (citations omitted). Jones does not challenge the proof presented with regard to the intent to distribute itself.[95] As noted above, his challenge is to the possession or constructive possession of the marijuana seized in the apartment.

Possession can be established by actual physical possession or by constructive possession of the narcotic. <u>State v. Major</u>, 888 So.2d 798, 802 (La. 2004). A person can be found to be in constructive possession of a controlled substance if the State can

---

[95]Some factors used by Louisiana courts to determine whether the State's circumstantial evidence is sufficient to prove intent to distribute are: (1) whether the defendant ever distributed or attempted to distribute illegal drugs; (2) whether the drug was in a form usually associated with distribution; (3) whether the amount was such to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant's actual or constructive possession was inconsistent with personal use; and (5) the presence of other paraphernalia evidencing intent to distribute. <u>Id</u>.

establish that he had dominion and control over the narcotics, even in the absence of physical possession.  Id.  Although mere presence in an area where drugs are located does not constitute constructive possession, Louisiana courts consider several factors in determining whether a defendant exercised sufficient control and dominion to establish constructive possession.  These factors include: (1) his knowledge that drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug consumption; (5) his physical proximity to drugs.  Id. at 802.  Guilty knowledge can be established by showing awareness of the illegal drugs in one's actual or constructive possession.  State v. Carter, 981 So.2d 734 (La. App. 3d Cir. 2008); State v. Lathers, 868 So.2d 881 (La. App. 5th Cir. 2004).

Substantial evidence at trial established that Jones was engaged in a hand-to-hand drug transaction when Sergeant Klein came upon him.[96]  He discarded packages of marijuana as he fled from police on foot, and more was found in and near his car.[97]  He had a key to an apartment on the same key ring used to hold the key to the white convertible.[98] Upon a search of the apartment with a warrant, the officers located numerous personal belongings linking Jones to that location, in addition to the drugs,

---

[96]St. Rec. Vol. 3 of 6, Trial Transcript, p. 50 (Sergeant Klein), 7/16/08.

[97]Id., p. 57, 58, 62, 63 (Sergeant Klein).

[98]Id., p. 68 (Sergeant Klein).

money, gun and ammunition.  Officers located an abundance of clothing in the bedroom and its closet in the size worn by Jones, including a jacket with crack cocaine, Jones's state issued picture identification and his platinum credit card in the pocket.[99]  The officers found a cell phone bill in Jones's name for the same phone number assigned to the cell phone found in the car.[100]  They also found a Wal-Mart picture envelope with Jones's name on it.[101]  They seized from the bedroom a gray shirt and ripped, sweaty jeans matching the ones worn by Jones during the chase.[102]

This evidence established that Jones had access, dominion and control of the apartment in which the drugs and drug paraphernalia were seized.  His clothing was discovered in the bedroom and closet, the same area as the drugs, paraphernalia, money and .40 caliber gun.  As his own mother identified, the apartment contained numerous pictures of Jones and his daughter.[103]  The State proved connexity between Jones and the apartment.  A reasonable jury could easily find that Jones had sufficient dominion and control over the apartment and its contents, including the drugs.

The State also presented evidence proving that Jones was involved in drug activity in the area, he was in possession of drugs that Sergeant Klein saw him discard during the

---

[99]Id., pp. 76, 78, 93, 97, 98 (Sergeant Klein).

[100]Id., p. 66 (Sergeant Klein).

[101]Id., p. 76 (Sergeant Klein).

[102]Id., pp. 77, 83 (Sergeant Klein).

[103]St. Rec. Vol. 4 of 6, Trial Transcript (continued), pp. 266-67, 269-71 (Arlene Jones).

chase, he had access by key to the area where the drugs were found, and the clothes he was wearing during the drug transaction and subsequent chase were found in the apartment in close proximity to the same room in which the drugs and other items were seized.

The evidence presented by the State was more than sufficient for a reasonable jury to find that he was in constructive possession of the marijuana, which was in sufficient quantity to establish an intent to distribute, something Jones does not challenge here.

Jones has failed to establish that the state appellate court erred in finding sufficient evidence to support the conviction for possession of marijuana with intent to distribute. The state court's denial of relief on this issue was not contrary to, or an unreasonable application of, Jackson.

(iii)  Possession of Cocaine in Excess of 28 grams

To prove possession of cocaine in excess of 28 grams but less than 199 grams, the State was required to prove beyond a reasonable doubt that Jones was in possession of more than 28 grams of cocaine, and that he knowingly possessed it.  State v. Price, 66 So.3d 495 (La. App. 5th Cir. 2011) (citing State v. Walker, 853 So.2d 61, 65 (La. App. 5th Cir. 2003).  Again, the element of possession may be proven by showing that the defendant exercised either actual or constructive possession of the cocaine.  Id. (citing State v. Jones, 985 So.2d 234, 241 (La. App. 5th Cir. 2008)).

A person may have constructive possession when the drugs are under his dominion and control. State v. Manson, 791 So.2d 749, 761 (La. App. 5th Cir. 2001). As outlined above, some factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. State v. Toups, 833 So.2d 910, 912 (La. 2002).

For the reasons previously addressed with regard to the possession with intent to distribute marijuana, the evidence presented at trial was sufficient to establish that Jones had dominion and control over the apartment and its contents. Again, his clothing, personal belongings and other documentation found in the apartment were sufficient for a reasonable jury to make this conclusion. The evidence also provided the jury with ample proof that Jones was involved in drug activity in the area, had access to the apartment and was in the apartment to change his clothes, placing him in close proximity to the drugs found in the bedroom and closet with his clothes. In fact, the State presented evidence that cocaine was found in his jacket pocket, along with his identification and credit card. The evidence was sufficient to link Jones to the apartment and establish dominion and control to a degree to support a finding of constructive possession of the cocaine.

Jones has failed to establish that the state appellate court erred in finding sufficient evidence to support the conviction for possession of cocaine in an amount between 28 grams and 199 grams, a quantity that Jones does not contest here. The state court's denial of relief on this issue was not contrary to, or an unreasonable application of, Jackson.

(iv) Possession of a Firearm with an Obliterated Serial Number

Jones's fourth conviction was for possession of the .40 caliber Glock with an obliterated serial number which was found in the apartment closet with the narcotics, money and his clothing. He does not challenge the fact that the gun was found in the apartment or that the serial numbers were obliterated. He challenges only the finding that he was in possession or constructive possession of the weapon.

Louisiana law makes it illegal for a person to possess a firearm with a serial number that has been obliterated, removed, changed or altered. La. Rev. Stat. Ann. § 40:1788(B); La. Rev. Stat. Ann. § 40:1792(A); State v. Jones, 799 So.2d 772, 777 (La. App. 3d Cir. 2001). It is sufficient that the defendant is in constructive possession of the firearm. State v. Day, 410 So.2d 741, 743 (La. 1982).

As determined previously, the evidence presented at trial was sufficient to establish that Jones had dominion and control over the apartment and its contents. The police recovered his clothing, personal belongings and other documentation from the

apartment. The evidence was sufficient for a reasonable jury to conclude that he also had dominion and control of the Glock found with his clothing and other items in the closet.

The evidence also showed that Jones had access to the apartment by means of his own key. The clothes he wore during the drug transaction and chase were retrieved from the apartment. It was reasonable for the jury to conclude that Jones had recently been in the apartment and in the same room as the gun. The evidence was sufficient to connect Jones to the apartment and establish his dominion and control to a degree to support a finding of constructive possession of the gun retrieved from the closet.

Jones has failed to establish that the state appellate court erred in finding sufficient evidence to support the conviction for possession of a weapon with an obliterated serial number. The state court's denial of relief on this issue was not contrary to, or an unreasonable application of, Jackson.

For all of the foregoing reasons, Jones has not shown his entitlement to consideration of or relief on the theory of cumulative error arising from counsel's performance or any other error at trial. Without merit in the individual claims, I cannot find a cumulative effect that establishes a denial of due process which rendered his trial fundamentally unfair or his convictions unconstitutional. The denial of relief on this claim by the state courts was neither contrary to or an unreasonable application of Supreme Court law.

# RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of Isaac Jones for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[104]

New Orleans, Louisiana, this ___13th___ day of September, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[104]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.